# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

LINDA REICHMAN, on behalf of
herself and all others similarly situated,
     Plaintiff,

vs.

OCWEN LOAN SERVICING, LLC,
EXPERIAN INFORMATION SOLUTIONS, INC.,
and TRANS UNION, LLC,
     Defendants.

_____/

CASE NO.:

**JURY TRIAL DEMANDED**
**CLASS RELIEF REQUESTED**

## COMPLAINT

**COMES NOW**, the Plaintiff, Linda Reichman ("Ms. Reichman" or Plaintiff) on behalf of herself and all others similarly situated, by and through her undersigned counsel, and bring this action against the Defendants, Ocwen Loan Servicing, LLC ("Ocwen"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union"), and in support alleges as follows:

## INTRODUCTION

1.    This is an action brought by a consumer for Defendants' violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), their implementing regulations, and the Fair Credit Reporting Act, 15 U.S.C. ch. 41 § 1681 *et seq.* ("FCRA"). This is also a class action brought under the Florida Consumer Collections Practices Act, Fla. Stat. §559.55 *et seq.* ("FCCPA")

2.      Plaintiff is seeking the remedies she is entitled under the above-listed statutes for an ongoing course of action by Defendants of improper billing, inaccurate credit reporting, and false threats of foreclosure for the home she has lived in almost 18 years.

## JURISDICTION

3.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 because the Complaint alleges federal claims and requires the resolution of substantial question of federal law.

4.      Moreover, this case is a civil action arising under the law of the United States over which this Court has original jurisdiction under 28 U.S.C. § 1331.

5.      In addition, the state law claim under FCCPA arises as part of the same case or controversy of the federal claims and therefore may be included under federal supplemental jurisdiction, 28 U.S.C. §1367.

6.      Venue in this District is proper because the property (the "subject property") is located in Broward County, Florida, and this is the District where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Venue is also proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here pursuant to the FCRA, 15 U.S.C. § 1681p.

## PARTIES

7.      At all times material hereto, Plaintiff was a natural person and resident of Palm Beach County, who owned and continued to own the subject property, which is located in Palm Beach County, 16*** Sims Road Apartment 2**A, Delray Beach, FL 33484-6307.

8.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a (c) of the FCRA and is a "consumer" as defined by Fla. Stat. § 559.55(8) of the FCCPA.

9.     At all times material hereto, the Defendant Ocwen was and is a national loan servicing company, duly licensed to transact business in the State of Florida, with a principal address of 1661 Worthington Road, Ste 100, West Palm Beach, FL 33409, and lists its registered agent as Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301-2525.

10.    At all times material hereto the Defendant Ocwen is and was a loan servicer as the term is defined in 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2(b), that services the loan obligation secured by a mortgage upon the subject property.

11.    Defendant Ocwen is an entity who furnishes information to consumer reporting agencies as provided in the FCRA, 15 U.S.C. § 1681s-2 and is a "debt collector" as defined by the FCCPA, Fla. Stat. §559.55(7).

12.    At all material times herein, Defendant Ocwen was a "person" subject to Florida Statutes, Section 559.72.   See Florida Statutes, Sections 559.55(5),(7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).
At all times relevant hereto, Defendant Ocwen was acting as a debt collector with respect to the collection of Plaintiff's alleged debt. *See Zerquera v. Centennial Homeowners' Association, Inc.*, 752 So.2d 694 (Fla. 3rd DCA 2000).

13.    In or around 2011, the Defendant Ocwen was hired to service the subject loan.

14.    The subject loan is a "federally related mortgage loan" as defined in 12 U.S.C § 2602(1) and 12 C.F.R. § 1024.2(b) and referred to by Ocwen as loan number *****3722.

3

15.     Defendant EXPERIAN is an Ohio limited liability company with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626 and is subject to the jurisdiction of this Court.

16.     At all times material Defendant EXPERIAN is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers of the purpose of furnishing consumer reports.   EXPERIAN disburses such consumer reports to third parties under contract for monetary compensation.

17.     Defendant TRANSUNION is a Delaware corporation with its principal place of business located at 555 West Adams Street, Chicago, IL 60661 and is subject to the jurisdiction of this Court.

18.     At all times material Defendant TRANSUNION is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers of the purpose of furnishing consumer reports.   TRANSUNION disburses such consumer reports to third parties under contract for monetary compensation.

## <u>BACKGROUND AND GENERAL ALLEGATIONS</u>

19.     Plaintiff has lived at the subject property for over eighteen years.

20.     From the inception of her mortgage on the subject property, the condominium association has paid the annual insurance needed for the property. *See Condominium Rider, attached as Exhibit A.*

4

21.     Prior to 2017, Plaintiff had made her monthly mortgage payments without issue.

22.     However, beginning in May 2017, Defendant Ocwen began refusing and returning payments for failure to have proper insurance on the property.     ***See returned payment(s), attached as Exhibit B.*** These returned payments continued until February 2018.

23.     In addition, Defendant Ocwen began force-placing its own insurance on Plaintiff's property, while charging her for the insurance.

24.     Plaintiff attempted to contact Defendant Ocwen multiple times, explaining that she did indeed have insurance and wanted to pay her mortgage, but she could not receive a specific answer as to why the current insurance from the condominium association was insufficient nor why she was unable to pay her mortgage from Ocwen's agents.

25.     Eventually, she turned to a her attorney, Richard Freedman, Esq. in Boca Raton, FL who also received no answer from Defendant, despite multiple communications.

26.     On or about February 2018, Plaintiff retained her current counsel after a referral from Richard Freedman.

27.     On or about January 18, 2018, Plaintiff was mailed by Defendant a notice of delinquency because of non-payment of her mortgage. ***See Exhibit C, Notice of Delinquency.***

## RESPA FACTUAL ALLEGATIONS

**A.      Force-Placed Insurance by Ocwen**

28.      As mentioned above, Plaintiff had been provided proper homeowner's insurance by her condominium association pursuant to her mortgage. For approximately sixteen (16) years, the insurance had been paid on the subject property by the condominium association without issue.

29.      Beginning May 2017, Ocwen quit accepting Plaintiff's mortgage payments. When contacted by Plaintiff and Plaintiff's counsel, Richard Freedman, Esquire, agents for Ocwen stated that it was because Plaintiff had failed to procure insurance on her property.

30.      Further, agents for Ocwen stated that they would have to force-place insurance on the property due to Plaintiff's failure.

31.      Plaintiff and her counsel explained multiple times to Ocwen's agents that her condominium association had always paid the insurance and that force-placed insurance was not needed.

32.      Ocwen provided no further response to this, apart from repeating itself. Mr. Freedman reports that these communications were "like talking to a brick wall."

33.      In September 2017, Ocwen force-placed insurance on Ms. Reichman's home without her consent or her request.

34.      Ocwen then would alternately refuse or accept the payments from September 2017 until July 2018 without any explanation.

35.     Obviously confused and concerned that she would go into foreclosure from a litany of servicing errors, Plaintiff sent a Request for Information pursuant to the Real Estate Settlement Procedures Act ("RESPA").

**B.     The First Request for Information ("RFI")**

36.     After attempting multiple times to contact Defendant, the Plaintiff wished to have her questions answered as to why Ocwen refused to accept her payments for eight months of her mortgage.

37.     On or about February 14, 2018, in an effort to utilize the protections afforded to consumers by Congress, Plaintiff mailed to Defendant a written request pursuant to TILA, Regulation X, and Regulation Z ("Plaintiff's First RFI"). A true and correct copy of this Plaintiff's First RFI is attached as ***Exhibit D.***

38.     The Defendant received Plaintiff's First RFI on or about February 20, 2018.

39.     Plaintiff's RFI asked the Defendant to provide:

> "(1) A complete payment history which lists the dates and amounts of all the payments I have made on the loan to date, and shows how each payment was applied or credited (whether to principal, interest, escrow, suspense, or some other treatment);
> **(2) A complete insurance proof history regarding my address for my mortgage, including any communications you have had with the Coach Houses of Addison Trace Owners Association, showing how insurance was demonstrated and when this insurance allegedly was dropped, including the definition of the term "Walls" that was mentioned in your letter to me;**
> (3) The total amount, specifically listed and identified, for any unpaid interest, escrow charges, and other charges due and owing as of February 2018;
> (4) The total amount that I have paid and/or sent a check to you on the mortgage account as of the date of the notice of default;
> (5) The amount, payment date, purpose, and recipient of all foreclosure expenses, late charges, NSF check charges, appraisal fees, property inspection/preservation fees, force placed insurance charges, legal fees, bankruptcy/proof of claims fees, recoverable

corporate advances, and other expenses or costs that have been charged and/or assessed to my mortgage account from January 2015 until February 2018;

**(6) An explanation as to why Lender insurance was removed from my account in December 2017 if I did not otherwise have proper insurance;**

(7) The balance in the escrow account as of February 13, 2018;

(8) The current interest rate on my mortgage account;

(9) A breakdown of the amount of claimed arrears or delinquencies on my account, including an itemization of all fees and charges you claim are currently due;

**(10) An explanation of why my house is going into foreclosure if I keep making my payments every month;**

(11) The payment dates, purpose of payment, and recipient of any and all foreclosure fees and costs that have been charged to my account;

(12) The payment dates, purpose of payment, and recipient of all escrow items charged to my account since May 2017;

(13) A breakdown of the current escrow charge showing how it is calculated and the reasons for any increase within the last 24 months;

(14) A copy of any annual escrow statements, and notices of a shortage, deficiency, or surplus, sent to us within the last three (3) years;

(15) The current balance in any suspense account as of January 2018 and the reason why such funds were deposited in the account; and

**(16) Any information you have about the insurance that has been on my home for the last 17 years."**

See *Exhibit D.*

## C.    Requirements and Responses After Ocwen Received Plaintiff's First RFI

40.    The Defendant was obligated to acknowledge receipt of Plaintiff's First RFI in writing within five (5) business days pursuant to 12 C.F.R. § 1024.36(c). Thus, a written response acknowledgement was due no later than February 25, 2018.

41.    Pursuant to 12 C.F.R. § 1026.36(c)(3), the Defendant was obligated to provide an accurate payoff statement within seven (7) business days of February 20, 2018, the date Ocwen received Plaintiff's First RFI.

42.    The Defendant was further required to provide a written response to Plaintiff's addition information requests within thirty (30) business days, with the requested information included or

a written statement that the "requested information is not available to the servicer" and the "basis for the servicer's determination." See 12 C.F.R. § 1024.36(d).

43.     Therefore, pursuant to RESPA under 12 C.F.R. § 1024.36(d), Ocwen was required to provide its' written response to the Plaintiff's RFI requests for insurance information, payment information, *et cetera*, no later than April 3, 2018.

44.     Ocwen responded with documents to the First RFI letter on March 30, 2018. However, the Defendant did not provide information regarding the insurance on Linda Reichman's account.

**D.     Second RFI to Ocwen**

45.     Following this lack of responsive documentation, Plaintiff sent a second Request for Information on or around April 12, 2018.  ***See Exhibit E.***

46.     On May 10, 2018, Ocwen responded to Plaintiff's RFI with a letter stating that the mortgagor-placed insurance for the 2015-2016 period was deficient and therefore, insurance was force placed onto Plaintiff's home. This information was confusing as Ocwen had been the mortgage servicer since 2011 and was well aware of the Condominium Association's place in providing insurance.  ***See Exhibit F, Ocwen's May 10, 2018 Response.***

47.     However, in this letter, Ocwen did not respond with insurance documentation a *second time*, nor did it explain why it had alternately accepted and denied

**E.     Correspondences Received for First Notice of Error**

48.     On May 21, 2018, Linda Reichman sent her first Notice of Error under 12 CFR 1024.35, which stated:

Ocwen Loan Servicing, LLC force-placed insurance for my home, charging me the fee for it, even though you had full notice of the insurance placed by my homeowner's association for over 17 years. This is a violation of 12 C.F.R. 1024.37(b), because "[a mortgage] servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance." Ocwen had no reasonable basis at all to set insurance on my house, charge me for it, and then refuse my payments. Pursuant to 12 C.F.R. § 1024.35(b)(5), this is an error because it is the "[i]mposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower."

49.     On June 15, 2018, after accepting Ms. Reichman's payments for months, Ocwen returned her mortgage payment for June 2018.

50.     Ocwen did not respond to this May 21, 2018 First Notice of Error nor did it provide a further explanation for the force-placed insurance or failure to accept Ms. Reichman's payments.

51.     Ocwen continues to violate RESPA both by failing to properly respond to requests for information and notices of error and further, by improperly accepting payments and force placing insurance that was neither requested nor required by Plaintiff or Plaintiff's mortgage.

## FCRA FACTUAL ALLEGATIONS

52.     During this same period, Plaintiff found that Defendant Ocwen had been reporting her payments from October 2016 through August 2017 as delinquent to the credit reporting agencies, Defendants Experian and Trans Union.

53.     Plaintiff had made every payment from October 2016 through August 2017 and could not understand why these payments were marked delinquent.

54.     On May 17, 2018, Plaintiff sent a dispute letter to Defendants Experian and Trans Union. *See Exhibit G, First Dispute Letter.*

54.     Neither Defendant Experian nor Trans Union responded to this dispute letter.

55.     After receiving the First Dispute Letter, Defendants Experian and Trans Union did not change Plaintiff's information.

56.     After receiving Plaintiff's first dispute letter, upon information and belief, Defendants Trans Union and Experian did not notify Defendant Ocwen of Plaintiff's dispute of the delinquent account.

57.     Upon information and belief, Defendants Trans Union and Experian failed to conduct a reasonable investigation of the delinquent account.

58.     As of the date of this Complaint, Defendants Trans Union and Experian have continued to improperly report the Ocwen account as delinquent.

59.     When Plaintiff disputed the account, Defendant Trans Union was required to perform an reinvestigation; however, the Defendant did not properly reinvestigate the dispute and continued to report the erroneous credit information with actual knowledge of errors, in violation of the FCRA.

60.     When Plaintiff disputed the account, Defendant Experian was required to perform an reinvestigation; however, the Defendant did not properly reinvestigate the dispute and continued to report the erroneous credit information with actual knowledge of errors, in violation of the FCRA.

61.     As a result of Defendants' credit reporting of the fraudulent accounts on Plaintiff's credit reports, Plaintiff's credit score was reduced. In fact, due to the ongoing improper delinquencies, Plaintiff's credit score has been reduced by at least fifty (50) points as of August 2018.

## FCCPA FACTUAL ALLEGATIONS

62.     In addition to the copious errors above, on July 24, 2018, Defendant Ocwen sent Plaintiff a letter that stated "**FORECLOSURE HAS BEEN INITIATED**" and that "**a foreclosure action has been initiated on the property listed above.**" The letter then goes on to explain some "Foreclosure Alternatives" that she could take including modification, listing the property for sale, and deeding the property over to Ocwen. *See Exhibit H, Foreclosure Letter.*

63.     Ms. Reichman was understandably concerned after receiving this letter, thinking that she would lose her home after Ocwen's continuous failures and that a foreclosure had been filed against her in Palm Beach County.

64.     However, upon review of this West Palm Beach County court records, Plaintiff found that *no foreclosure suit* had been initiated against her.

65.     As of the filing of this suit, Defendant Ocwen still hasn't filed a foreclosure action against Plaintiff Linda Reichman.

66.     Defendant Ocwen falsely represented that a foreclosure lawsuit had been filed against the Plaintiff in order to intimidate and scare Plaintiff into paying the debt.

67.     This foreclosure letter is a clear violation of the Florida Consumer Collections Practices Act.

## FCCPA CLASS ALLEGATIONS

68.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on behalf of herself and all others similarly situated.

69.     The Class is defined as:

All persons located in Florida who (1) received a letter from Defendant Ocwen in connection with an attempt to collect any consumer debt, (2) where the letter was substantially similar or materially identical to the letter delivered to Plaintiff and (3) where Defendant Ocwen had not filed a foreclosure suit prior to the date of the letter.

70.     The Class Period for Count III (FCCPA) begins two years prior to the filing of the original Complaint in this matter and ends when this Court issues an Order approving Class Notice.

71.     Plaintiff is unable to state the exact number of members of the Plaintiff's Class because that information is solely in the possession of Defendant Ocwen. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Defendant Ocwen's business records. Upon information and belief, the putative Class exceeds several hundred consumers since Defendant uses the same form letter (***Exhibit H)*** in connection with its collection efforts in hundreds, if not thousands, of these debts each year. Therefore, the punitive Class is so numerous that joinder of all members would be impracticable.

72.     Questions of law and fact common to the Plaintiff Class exist and predominated over questions affecting only individual members, including "whether Defendant violated FCCPA by sending a letter claiming a foreclosure had been initiated when it fact it had not been filed."

73.     The claims asserted by the named Plaintiff in this action are typical of the claims of the members of the Plaintiff Class because, upon information and belief, Defendant uses standardized letters when attempting to collect debts. The claims of the Plaintiff and of the

Plaintiff Class originate from the same conduct, practice and procedure, on the part of the Defendant. There are no individual facts which would distinguish Plaintiff's FCCPA claim from other Class members that received debt collection letters similar to Exhibit H from Defendant Ocwen.

74.     The named Plaintiff will fairly and adequately represent and protect the interest of the members of the Plaintiff Class because she has no interest antagonistic to the Class she seeks to represent, and because the adjudication of her claims will necessarily decide the identical issues for other class members. Whether Defendant Ocwen's debt collection letter sent to Plaintiff violates the FCCPA is an issue that will be decided for all other consumers with similar or identical letters. There is nothing peculiar about the Plaintiff's situation that would make her inadequate as class representative. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

75.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class member will be relatively modest, compared to the expense and burden of individual litigation. It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein because the cost of such individual litigation would be cost prohibitive as individual statutory damages are capped at $1000.00. It would be difficult, if not impossible, to obtain counsel to represent Plaintiff on an individual basis for such small claims. More importantly, the vast majority of Class members are not aware that the debt collection letters used by Defendant violate the FCCPA.

## COUNT I
## CLAIMS AGAINST DEFENDANT OCWEN
## FOR VIOLATIONS OF RESPA

76.     Plaintiff incorporates Paragraph 1 to 75 above as if fully stated herein.

77.     Defendant OCWEN LOAN SERVICING, LLC has violated multiple subsections of RESPA, including sections involving the response to requests for information, force-placed insurance, and accepting mortgage payments.

78.     Section 6, Subsection (e) of RESPA states in relevant part:

> **(2)Action with respect to inquiry**     Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
>> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> **(i)** to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> **. . .**
>
> **(C)** after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> **(i)** information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> **(ii)** the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
>
> 12 U.S.C. sec. 2605(e).

79.     After Plaintiff Reichman's multiple communications to Defendant Ocwen, including her Notice of Error and Requests for Information, the Defendant failed to respond completely to her requests within the 30 days allotted under the statute, in violation of Section 6 of RESPA.

80.     Section 6, Subsection (e) also states:

**(3)Protection of credit rating**

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).

12 U.S.C. sec. 2605(e).

81.     Defendant Ocwen, despite having full, ongoing Notice of an Error relating to a dispute of Plaintiff's payments - that they were refusing them - continued to report to her credit delinquencies on her account, thereby violating 12 U.S.C. sec 2605(e)(3).

82.     Section 6, Subsection (k) states in pertinent part:

**(1) In General** A servicer of a federally related mortgage shall not -

(A)     obtain force-placed hazard insurance insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance.

. . .

(C)     fail to take timely action to respond to a borrower's requests to correct errors relating to the allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosures, or other standard servicer's duties.

12 U.S.C. sec. 2605(k).

83.     Defendant Ocwen violated the above subsection because it never provided nor had a reasonable basis to force-place hazard insurance, despite multiple requests from Plaintiff Reichman and her counsel. Further, Defendant Ocwen has allowed Plaintiff Reichman's

payments to be inexplicably returned for months, allowing her mortgage to go into delinquency and be threatened - by Ocwen - with foreclosure.

84.     The Plaintiff has been injured in fact, and has suffered actual damages by virtue of Defendant Ocwen's repeated, ongoing violations of the legal rights and protections which Congress afforded under RESPA.

85.     The threshold of the Defendant's violations stems from the repeated violations of the above-listed subsections. Therefore, the Plaintiff's injuries result in part from the Defendant's invasion of a legally protected interest that is concrete, particularized, and actual.

86.     The Plaintiff is entitled to actual damages as a result of Defendant Ocwen's failure to comply with Regulation X and RESPA, pursuant to 12 U.S.C. sec. 2605(f)(1)(A), including but not limited to: (1) cost of force-placed insurance and improper late fees levied by Ocwen; (2) photocopying costs and postage costs incurred in mailing the Notices of Error; and (3) reasonable attorney's fees and costs related to this action. *See Martinez v. Shellpoint Mtg. Servicing,* No. 16-60026-CIV, 2016 WL 6600437 (S.D. Fla. Nov. 8, 2016); *Porciello v. Bank of America, N.A.*, 2015 WL 8999942 (M.D. Fla. 2015)(same).

87.      The Plaintiff has also suffered actual damages in the form of emotional distress, anxiety, the constant fear of losing her property, worry, embarrassment, bewilderment, and anguish as a result of the ongoing failures of Defendant Ocwen to address Plaintiff's concerns regarding the force-placed insurance and loan payments, **all while seeking to foreclose on Plaintiff's home.** *See Bryan v. Fed. Nat'l Mortg. Ass'n*, 2014 WL 2988097 (M.D. Fla. 2014)(finding that plaintiffs sufficiently alleged damages in the form of emotional distress, anxiety, and embarrassment).

88.     Plaintiff is entitled to statutory damages in an amount not greater than $2000 pursuant to 12 U.S.C. sec 2605(f)(1)(B), as a result of Defendant Ocwen's pattern or practice of noncompliance with Regulation X and RESPA.

89.     Plaintiff is entitled to the costs of this action, together with a reasonable attorney's fee as determined by the court, pursuant to 12 U.S.C. sec. 2605(f)(3).

**WHEREFORE,** Plaintiff, LINDA REICHMAN, respectfully asks this Court to enter an order granting judgment for the following:

a)     That the Defendant Ocwen be required to provide the totality of the information requested in Plaintiff's RFI with detail and specificity;

b)     For actual damages, statutory damages, costs, and reasonable attorney's fees, pursuant to 12 U.S.C. sec 2605(f); and

c)     Such other relief to which this Court may deem just and proper.

**COUNT II**
**CLAIMS AGAINST DEFENDANT OCWEN**
**FOR VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681 *et seq.***

90.     Plaintiff incorporates Paragraph 1-75 above as if fully stated herein.

91.     Defendant OCWEN  has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. § 1681s-2(b).

92.     Specifically, OCWEN violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of disputed information, by failing to review all relevant information provided by the consumer reporting agency, by failing to review Plaintiff's prior dispute letters and its own entire file as part of such investigation, by failing to accurately communicate the results of its

18

investigation to the consumer reporting agencies, by verifying inaccurate or incomplete information to a consumer reporting agency as part of a reinvestigation of such information disputed by Plaintiff and/or by verifying and continuing to report inaccurate information after notice and confirmation of those errors.

93.     Further, OCWEN violated 15 U.S.C. § 1681s-2(b) by failing to promptly modify, delete or permanently block information disputed by Plaintiff which it knew or reasonably should have known was inaccurate, obsolete and/or incomplete.

94.     Following the reinvestigation and dispatch of direct notice to OCWEN, who failed to notify the consumer reporting agencies to whom it reported credit information that the debts were disputed, in violation of the FCRA, 15 U.S.C. §§ 1681s-2(b) the general duties implied to all conduct of furnishers under 15 U.S.C. § 1681s-2(a)(3).

95.     OCWEN's reinvestigation was not conducted in good faith.

96.     OCWEN's reinvestigation was not conducted reasonably.

97.     OCWEN's reinvestigation was not conducted using all information reasonably available to OCWEN.

98.     OCWEN's reinvestigation was *per se* deficient by reason of these failures in its reinvestigation of the trade line on Plaintiff's consumer report.

99.     OCWEN's actions in violating the FCRA, 15 U.S.C. § 1681s-2(b) constituted willful and/or negligent noncompliance with the FCRA, and entitles Plaintiff to actual damages enumerated in 15 U.S.C. § 1681o and/or 15 U.S.C. § 1681n.

100.    As a result of OCWEN's conduct, actions, and inactions, Plaintiff has suffered emotional distress, humiliation, mental anguish and damages to her creditworthiness.

101.    OCWEN's conduct, action and inaction as willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 USC § 1681n. In the alternative, it was negligent entitling Plaintiff to recover actual damages under 15 USC § 1681o.

102.    Plaintiff is entitled to recover costs and attorney fees from Defendant OCWEN in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and/or §1681o.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against OCWEN:

  a)    For actual damages;

  b)    For compensatory damages;

  c)    For statutory damages;

  d)    For punitive damages;

  e)    For attorney's fees and costs incurred in this action;

  f)    For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and

  g)    For such other and further relief as the Court may deem just and proper.

**COUNT III**
**CLAIMS AGAINST DEFENDANT EXPERIAN**
**FOR VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681 *et seq.***

103.    Plaintiff incorporates Paragraph 1 – 75 above as fully stated herein.

Defendant EXPERIAN willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

104.    Defendant EXPERIAN willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report.

105.    Defendant EXPERIAN willfully and/or negligently violated 15 U.S.C. § 1681e (b).

106.    Defendant EXPERIAN willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

107.    Defendant EXPERIAN willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

108.    Defendant EXPERIAN negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

109.    Defendant EXPERIAN willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

110.    In response to the request for reinvestigation, Defendant EXPERIAN improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

111.    Defendant EXPERIAN has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i, 1681(n) and/or 1681(o).

112.    Defendant EXPERIAN's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

113.    Defendant EXPERIAN's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff as stated herein, and as a result, Defendant EXPERIAN is liable to compensate Plaintiff for the full amount of

statutory and actual damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

114.    Additionally, the court may award punitive damages under 15 U.S.C. § 1681n.  Plaintiff will seek to amend the Complaint to seek same if discovery shows punitive damages may be proper.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant EXPERIAN:

        a)    For actual damages;

        b)    For compensatory damages;

        c)    For statutory damages;

        d)    For attorney's fees and costs incurred in this action;

        e)    For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and;

        f)    For such other and further relief as the Court may deem just and proper.

**COUNT IV**
**CLAIMS AGAINST DEFENDANT TRANSUNION**
**FOR VIOLATIONS OF THE FCRA**
**15 U.S.C. § 1681 *et seq.***

115.    Plaintiff incorporates Paragraph 1-75 above as fully stated herein.

116.    Defendant TRANSUNION willfully and/or negligently failed to put in place procedures to properly reinvestigate consumer claims of inaccuracy in credit reports.

117.    Defendant TRANSUNION willfully and/or negligently refused to properly reinvestigate Plaintiff's consumer report.

118.    Defendant TRANSUNION willfully and/or negligently violated 15 U.S.C. § 1681e (b).

119.    Defendant TRANSUNION willfully and/or negligently violated 15 U.S.C. § 1681i(a)1.

120.    Defendant TRANSUNION willfully and/or negligently violated 15 U.S.C. § 1681i (a)(4).

121.    Defendant TRANSUNION negligently and/or willfully failed to properly consider and give due weight to all relevant information submitted by Plaintiff in the course of the reinvestigation, in violation of the FCRA, 15 U.S.C. § 1681 (a)(4).

122.    Defendant TRANSUNION willfully and/or negligently violated 15 U.S.C. § 1681i (a)(5).

123.    In response to the request for reinvestigation, Defendant TRANSUNION improperly verified the trade lines as correct, and refused to remove the inaccurate information, in violation of the requirements of the FCRA, 15 U.S.C. § 1681i (a)(5).

124.    Defendant TRANSUNION has negligently and/or willfully failed to conduct a proper reinvestigation of the trade lines in violation of the FCRA, 15 U.S.C. §§ 1681i, 1681(n) and/or 1681(o).

125.    Defendant TRANSUNION's actions in violating the FCRA constituted negligent and/or willful noncompliance with the FCRA and entitles Plaintiff to actual damages, statutory damages, and attorney's fees and costs as enumerated in 15 U.S.C. §§ 1681n and/or 1681o.

126.    Defendant TRANSUNION's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiff as stated herein, and as a result, Defendant TRANSUNION is liable to compensate Plaintiff for the full amount of statutory and actual damages, along with attorney's fees and costs, as well as such other relief as permitted by law.

127.     Additionally, the court may award punitive damages under 15 U.S.C. § 1681n.  Plaintiff will seek to amend the Complaint to seek same if discovery shows punitive damages may be proper.

**WHEREFORE**, Plaintiff prays that the Court grant the following relief in favor of Plaintiff and against Defendant TRANSUNION:

      a)  For actual damages;

      b)  For compensatory damages;

      c)  For statutory damages;

      d)  For attorney's fees and costs incurred in this action;

      e)  For an Order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information; and;

      f)  For such other and further relief as the Court may deem just and proper.

### COUNT V

### FCCPA CLASS CLAIM AGAINST OCWEN

128.     Plaintiff, on behalf of herself and all others similarly situated, repeats and re-alleges each and every allegation contained in paragraphs 1 through 75 above as if fully set forth herein.

129.     At all times material herein, Plaintiff and Class members were "debtors" as defined by Fla. Stat. sec. 559.55(2).

130.     At all times material herein, Defendant was a "debt collector" or "person" as defined by Fla. Stat. sec. 559.55(6).

131.     The FCCPA, section 559.72(7) provides:

In collecting consumer debts, no person shall:

. . . willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

132.   For purposes of the claims brought under the FCCPA in this action, the applicable standard under the FCCPA is the "least sophisticated" consumer test. *See* Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).

133.   Defendant Ocwen, through its foreclosure-threatening letter willfully harassed the debtor, Plaintiff Reichman, into thinking that she was being foreclosed upon, regardless of the fact that the Defendant had seemingly no intention of foreclosing.

134.   The "least sophisticated consumer" would even more likely be convinced that their house had been foreclosed upon and that following Ocwen's demands was the only course of action. Therefore, this letter violates the FCCPA section 559.72(7).

135.   In determining whether an act violates the FCCPA, the courts use a "least sophisticated consumer standard." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010) [22 Fla. L. Weekly Fed. C647a]. The "least sophisticated consumer" standard is consistent with basic consumer-protection principles. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1172-1175(11th Cir. 1985) (citations omitted). This is an objective standard and "the least sophisticated consumer is "'presumed to possess a rudimentary amount of information about the world . . .'" (quoting *Clomon v. Jackson*, 988 F.3d 1314, 1319 (2nd Cir. 1993). "[W]hile protecting naïve consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection practices by preserving a quotient of reasonableness . . ." *US v. Nat' Fin. Servs., Inc.,* 98 F.3d 131, 136 (4th Cir. 1996). Laws protecting consumers from unfair debt collection practices were enacted to protect the public and not experts. Id. at 1194. In considering

25

FCCPA claims, the Court must view such claims "from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." *Jeter*, at 1179.

136.    As a direct and proximate result of Defendant's FCCPA violations, Plaintiff and the Class have been harmed. Plaintiff and the Class are entitled to statutory damages, and attorney's fees and costs pursuant to Fla. Stat. section 559.77(2).

137.    In addition, Plaintiff and the Class seek a permanent injunction prohibiting Defendant from sending out collection letters similar to ***EXHIBIT H*** in the manner described above.

**WHEREFORE,**    Plaintiff    prays    that    the    Court    enter    an    Order:

a)    Certifying this action as a class action as provided by Federal Rule of Civil Procedure 35, appointing Plaintiff as class representative, and appointing the undersigned as Class Counsel;

b)    Adjudging that Defendant violated the FCCPA, Fla. Stat. 559.72(7). and awarding Plaintiff and Class members statutory damages pursuant to Florida Statutes 559.77(2);

c)    Enjoining Defendant from sending collection letters similar to ***EXHIBIT H*** in the manner described in the lawsuit;

d)    Awarding Plaintiff, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to Florida Statutes 559.77(2);

e)    Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

f)    Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

## SPOILATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and its affiliates safeguard all relevant evidence – paper, electronic documents, or date – pertaining to this litigation as required by law.

Respectfully submitted this 23rd of August, 2018.

**MAX STORY, P.A.**

/s/ Max Story_____
MAX STORY, ESQ.
Florida Bar No.:  527238
AUSTIN J. GRIFFIN, ESQ.
Florida Barn No.: 117740
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL  32250
Telephone: (904) 372-4109
max@storylawgroup.com
austin@storylawgroup.com
Attorneys for Plaintiff